IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES NEWSOME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:10CV548-WHA |
| | ) | |
| KWANGSUNG AMERICA, CORP., | ) | (wo) |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. #26),[1] filed by Defendant KwangSung America, Corp. ("KwangSung") on June 3, 2010.

The Plaintiff filed a Complaint in this case on June 25, 2010, bringing claims of violation of the Age Discrimination in Employment Act ("ADEA") (Count I), race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (Count II), national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (Count III) retaliation in violation of the ADEA and Title VII (Count IV), and state law breach of contract (Count V).

The court has federal question subject matter jurisdiction over the federal claims and supplemental jurisdiction over the breach of contract claim.  *See* 28 U.S.C. § 1331, 28 U.S.C. §

---

[1] The motion has been filed in accordance with the dispositive motion deadline, *see* Doc. #15, is based on attached evidence, *see* Fed. R. Civ. Pro. 12(d), and is untimely as a Rule 12(b)(6) motion, so the court will consider only the alternative Motion for Summary Judgment.

1367. The Plaintiff contends that his employment was not renewed because of his age, national origin, and race.[2]

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations,

---

[2] The Complaint states Newsome was terminated. The decision at issue was a decision not to renew a contract with Newsome, which Newsome says occurred prior to the end of his one-year written contract and terminated his employment.

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

In June 2007, KwangSung hired the Plaintiff, Charles Newsome ("Newsome"), to be a Quality Manager at its Alabama manufacturing plant. Newsome was 62 years old at the time of his hire. Newsome was hired on a written one-year contract. His contract was renewed for one year on July 1, 2008. His duties included ensuring that all parts leaving KwangSung were within specification, supervising and training quality inspectors, and working with the quality departments of KwangSung's customers.

The Chief Executive Officer of KwangSung was Moon W. Kim ("Kim"). Four managers reported to Kim–Production, Maintenance, Development & Quality, and Administration. KwangSung had four customers MOBIS Alabama, MOBIS Georgia, Hyundai Motor

Manufacturing of Alabama, and Kia Motor Manufacturing of Georgia.  Newsome reported directly to S.W. Park, Development & Quality Manager.

KwangSung has presented evidence that complaints were received from customers about products not meeting specifications.  Kim was made aware of quality concerns raised by KwangSung customers.  Newsome states that he was not given notice of any complaints.  Newsome states that he was not disciplined verbally or in writing.  Newsome also presents evidence that some decisions regarding shipment of parts were made by management, and not by him.

Kim testified in his deposition that he decided on May 23, 2009 not to extend Newsome's contract.  Pl. Ex. #7 at p. 70: 12-13.

Newsome has stated in his deposition that Kim told him he wanted someone younger and someone of Korean descent to replace Newsome.  Pl. Ex. #1 at p. 149: 5-11.  Newsome also states that Kim said that he did not need Newsome any more and "we will get a Korean and someone younger to take his place." *Id.* at p. 154: 5-9; Pl. Ex. 2 at ¶ 21.

Charlotte Pierce, Community Research Specialist at Tuskegee University, and Kathy Newsome, Newsome's wife, stated in affidavits that during a meeting with Kim, Kim stated "we don't need Charlie [Charles Newsome] anymore and we will get a Korean and someone younger to take his place."  Pl. Ex. 5 at ¶ 8; Pl. Ex. 6 at ¶ 10.

Newsome states that he informed Sharon McKinney ("McKinney"), the Human Resources Director for KwangSung, that he was going to be replaced by a younger Korean.  Pl. Ex. 8 at p. 83:12-15.

On June 19 and 23, 2009, Newsome sent letters to KwangSung. The letters are substantially identical, other than the fact that only one of them is signed. In the letters, Newsome states, "Since being informed that the company is letting me go, it has come to my attention that I am being replaced by a much younger person of Korean descent." Def. Ex. #21.

Newsome subsequently met with Kim and McKinney. On June 25, 2009, he was told by McKinney to turn in his key and he refused to do so. Newsome was paid through July 4, 2009. Def. Ex. #9.

John Kim was hired in July 2009 as Quality Manager. He was 56 years old at the time of his hire.

## IV. DISCUSSION

To prove discrimination in employment, a plaintiff may "use the traditional framework and use direct evidence to create a triable issue of whether he was fired or treated less favorably because" of a protected characteristic. *Morris v. Emory Clinic, Inc.,* 402 F.3d 1076, 1081 (11th Cir. 2005). A plaintiff may also use the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) framework. *Id.* If a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002).

### A. Age Discrimination

The ADEA applies to individuals who are at least 40 years old, and makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). "To establish a disparate-treatment claim

under the ... ADEA, ... a plaintiff must prove that age was the 'but for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, 129 S.Ct. 2343, 2350 (2009).

In this case, Newsome has attempted to prove "but for" causation for the non-renewal of his contract by using direct evidence of age discrimination. "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir.2004) (quotation and alterations omitted).

In evaluating whether evidence is direct evidence of discrimination, the court must determine whether the evidence reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Wilson,* 376 F.3d at 1086 (quotation omitted). Specifically with respect to age discrimination, only blatant remarks, "whose intent could be nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989) (alterations omitted)). Statements such as "when the position open[s] up, the company [will] be looking for a person younger than Lindsey to fill it" constitute direct evidence of age discrimination. *Lindsey v. Am. Cast Iron Pipe Co.*, 772 F.2d 799, 801–02 (11th Cir. 1985).

Although the *Gross* decision clarified that age discrimination is governed by a "but for" analysis which is different than the analysis applied to Title VII discrimination claims, the Eleventh Circuit recently examined cases involving direct evidence of age discrimination in light of the holding in *Gross,* and confirmed that a plaintiff in an ADEA case may establish a claim for illegal age discrimination through direct evidence, under *Gross*. *See Mora v. Jackson Memorial Foundation*, 597 F.3d 1201, 1204 (11th Cir. 2010).

KwangSung does not argue that Newsome has failed to present direct evidence of age discrimination, but instead states that Newsome has merely alleged direct evidence of discrimination. The statements relied upon by Newsome, however, are not merely alleged, but are supported by evidence provided to the court, in accordance with Fed. R. Civ. Pro. 56.

Newsome has stated Kim told him he was going to replace Newsome with a younger Korean. Pl. Ex. 2 at ¶ 21. Charlotte Pierce, Community Research Specialist at Tuskegee University, and Kathy Newsome, Newsome's wife, stated in affidavits that during a meeting with Kim, Kim stated "we don't need Charlie [Charles Newsome] anymore and we will get a Korean and someone younger to take his place." Pl. Ex. 5 at ¶ 8; Pl. Ex. 6 at ¶ 10.

KwangSung also states that it is not realistic that Kim would make the statements attributed to him in sworn testimony and affidavits. A mere dispute between the parties as to whether a comment was made is not sufficient to defeat summary judgment, but instead creates a genuine issue of material fact as to whether a defendant intentionally discriminated. *See Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 855 (11th Cir. 2010).

The statements by Kim in evidence, that he would get someone younger to take Newsome's place, are very similar to the statement "when the position open[s] up, the company [will] be looking for a person younger than Lindsey to fill it," identified by the Eleventh Circuit as direct evidence. *See Lindsey*, 772 F.2d at 801–02 ("Lindsey's testimony that Foshee told him the company wanted a younger person to fill the position, if believed, constitutes sufficient direct evidence to remove this case from the ambit of *McDonnell Douglas*."). The court concludes, therefore, that Newsome has presented direct evidence of age discrimination.

KwangSung argues that there were several reasons that Newsome's contract was not renewed, so Newsome cannot prove that age was a "but for" reason for Kim's decision not to renew the contract.  KwangSung points to the following reasons why Newsome's contract was not renewed: Newsome's subordinates complained that they did not have proper information regarding standards to be used, KwangSung's customers complained about Newsome's performance, Newsome was rude to management and co-employees, Newsome attempted to undermine KwangSung by telling MOBIS/AL that parts had quality issues, Newsome failed to submit an acceptable KMMG report, and Newsome attempted to recruit KwangSung employees to work for his wife's company.

The *McDonnell Douglas* burden shifting analysis, wherein a plaintiff establishes a prima facie case, but must also rebut the defendant's proffered non-discriminatory reason, only applies in circumstantial evidence cases.  *See  McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   When a claim is supported by direct evidence, "no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons."  *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir. 1982).

KwangSung argues that although its burden in the face of direct evidence of discrimination is not one of production but persuasion, the court still should conclude that age was not the but for reason for Newsome's termination, and grant summary judgment.

Specifically in the context of an age discrimination claim, the Eleventh Circuit has held that because a reasonable juror could accept at face value direct evidence that the employer acted on the basis of age, a plaintiff must be given the benefit of resolving all reasonable inferences in

the plaintiff's favor, and summary judgment cannot be granted to the defendant.  *Mora*, 597 F.3d at 1205.  Therefore, while a jury may ultimately agree that age was not the "but for" reason for the non-renewal of Newsome's contract, and that the reasons KwangSung points to were the true reasons, that determination is not one which can be made at the summary judgment stage, in light of Newsome's direct evidence of age discrimination.  In other words, while KwangSung will have the opportunity to convince a jury that the evidence as to statements by Kim is not to be believed and/or that other reasons were the "but for" cause of the decision not to renew Newsome's contract, in the face of direct evidence of discrimination, those are issues for the jury, not the court in ruling on a Motion for Summary Judgment.  Summary judgment is, therefore, due to be DENIED as to the age discrimination claim.

       Having determined that summary judgment is due to be denied based on Newsome's direct evidence of age discrimination, the court need not also analyze the claim under the circumstantial evidence framework for employment discrimination cases.  *Swierkiewicz v. Sorema N. A.,*  534 U.S. 506, 511 (2002).

### B.  National Origin and Race Discrimination

       Newsome has argued, and KwangSung does not dispute, that Newsome's evidence of Kim's statement that he would replace Newsome with a Korean employee implicates both a race and national origin claim.  In fact, both parties contend the same analysis applies to both claims. The evidence KwangSung has pointed to, Kim's statement that he wanted to replace him with a Korean employee, therefore, is direct evidence of national origin and race discrimination. *See, e.g., Booth v. Pasco County, Fla*., No. 8:09cv2621-T, 2010 WL 2757209 at *10 (M. D. Fla.  July

9

13, 2010) ("... a particular national origin can be reasonably understood to indicate a particular race or color in some instances, such as where the populace of that nation is overwhelmingly of a single race or color") (citation omitted).

As noted, the *McDonnell Douglas* burden shifting analysis, wherein a plaintiff establishes a prima facie case, but must also rebut the defendant's proferred non-discriminatory reason, only applies in circumstantial evidence cases.  *See  McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   When a claim is supported by direct evidence, "no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons." *Lee,* 684 F.2d at 774.   Again, while a jury may ultimately find that race or national origin were not motivating reasons for the decision not to renew Newsome's contract, that determination is not one which can be made at the summary judgment stage, in light of Newsome's direct evidence of discrimination. Therefore, summary judgment is also due to be DENIED as to the race and national origin discrimination claims.  Also, as with the age discrimination claim, having concluded that summary judgment is due to be denied based on direct evidence, the court need not analyze Newsome's claims under the circumstantial evidence framework.

## C.  Retaliation

Newsome does not purport to offer direct evidence of retaliation in this case, but instead relies on circumstantial evidence.  Therefore, the retaliation claim is analyzed under the *McDonnell Douglas* framework.  Under this framework, the plaintiff must establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to

articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). That is, even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will sometimes be available to an employer in such a case." *Chapman v. AI Transport*, 229 F.3d 1012, 125 n.11 (11th Cir. 2000).

A plaintiff may establish a prima facie case of retaliation by showing (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

KwangSung argues that Newsome cannot establish a prima facie case of discrimination because he cannot establish a causal link. KwangSung argues that Newsome cannot show that he engaged in any protected activity prior to the decision not to renew his contract. KwangSung argues that the only complaint voiced by Newsome were the June 2009 letters.[3] KwangSung

---

[3] As stated earlier, there are two letters, one dated June 19 and the other June 23, but they appear to be identical, with the exception of Newsome's signature being present on only one letter.

11

says that the June 2009 letters cannot be the basis of a retaliation claim because the decision not to renew Newsome's contract was made before Newsome wrote the letters. KwangSung points out that the letters state, "[s]ince being informed that the company is letting me go . . . ." Pl. Ex. # 21.

Newsome does not directly respond to this argument by KwangSung. Instead, he states in his response to the Motion for Summary Judgment that when a plaintiff makes an internal complaint of discrimination and is terminated within three days of the complaint, the close temporal proximity is sufficient to survive summary judgment. To establish that he was terminated within three days of a complaint, Newsome cites evidence from McKinney and Kim. McKinney, on the page cited, did not say that Kim made the decision on any particular date, but merely that Kim made the final determination. Pl. Ex. #8 at page 114: 12-19. On the pages cited in Kim's deposition, Kim states that he made the decision on May 23, 2009. Pl. Ex. #7 at p. 70: 4-13. Kim also states in an affidavit that he told Newsome in May 2009 that he would not be extending his contract. Def. Ex. #2, ¶ 13.

The only affirmative evidence as to the timing of the decision not to renew Newsome's contract, Kim's deposition testimony, is that the decision was made in May 2009, before Newsome sent his June 2009 letters, not after. Newsome's only evidence, the letters he wrote, in fact state that a decision had already made, and communicated to him, and so do not create a question of fact on this point.

Any event which occurs after the decision is made cannot be casually connected to the decision. *See, e.g., Schecter v. Georgia State Univ.*, 341 Fed. App. 560, 563 (11th Cir. 2009) (no causal connection where adverse employment action occurred before protected activity); *see also*

12

*Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.");[4] *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Therefore, summary judgment is due to be GRANTED on the retaliation claim in the Complaint.

In addition to the letters Newsome sent in June of 2009, Newsome also states in his brief that he relies on concerns expressed to McKinney that he was going to be replaced by a younger Korean. He characterizes these concerns as a complaint, even though McKinney states in her deposition she did not take Newsome's concern as a complaint, and did not "take that seriously." Pl. Ex. #8 at p.85: 16-23. It is not clear that Newsome intends to proceed separately on a theory that he was retaliated against based on a conversation with McKinney, because that theory is not pled in the Complaint, nor discussed by Newsome in his deposition. In response to the Motion for Summary Judgment, when Newsome addresses the causation element of his prima facie case of retaliation, he states he made an internal complaint, wrote a letter, and was terminated within

---

[4] KwangSung also acknowledges that Newsome stated in his deposition that he asked Kim in February 2009 why Koreans are treated better than caucasians. KwangSung questions whether the February 2009 question to Kim is protected activity. Newsome does not appear to rely on this question in support of his claim. In the event that he does, the evidence in the record is that Kim decided not to extend Newsome's contract around May 23, 2009. Def. Ex. #7, p. 70: 4-13. There is no showing of a causal connection, based on timing alone, between a question in February 2009 and a decision in May 2009. *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that three-month period without more is not close enough to establish causal connection).

three days of the letter. Newsome has presented no evidence about the timing of the concerns he expressed to McKinney, or McKinney's discussion of those concerns with the decision maker, Kim.

The court has reviewed the evidence it has been pointed to regarding the conversation between McKinney and Newsome. In the pages of her deposition cited by Newsome, McKinney states that she talked to Newsome about his concerns that he would be replaced by a younger Korean prior to his sending his June 2009 letters, but does not remember when. Pl. Ex. #8 p. 79: 23. McKinney links Newsome's conversation to a visit to KwangSung by a person whom Newsome assumed was his replacement, but does not give a date of that visit, other than to say that Newsome said the person visited "last week or whenever." *Id.* at p. 80: 15-16.[5]

The burden of establishing a prima facie case is on Newsome. Without other evidence of causation, he must rely on the timing of a protected activity and the adverse decision, and if the time period is "very close," may establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). The court has been presented with no evidence of the date of any oral complaint by Newsome to McKinney, other than it occurred before Newsome wrote his June 2009 letters. The concerns expressed to McKinney could have occurred after the decision had been made in May 2009 not to Newsome's contract, or so much earlier than that decision

---

[5] The court notes that on a page of McKinney's deposition which Newsome has not cited, and apparently does not intend to rely upon in support of this claim, when McKinney was asked whether the first time she talked to Kim about not renewing Newsome's contract was when she received the June letter, she said she did not know when it was. Pl. Ex. # 8 at page 112: 3. She then said "it was prior to that, after Charlie had talked to me about it. But the time frame, I don't know. Because I'm thinking it was around April or something of that nature. So I don't know what the time frame is." Even if Newsome intended to rely on this evidence, the court finds this evidence to be too speculative to create a question of fact as to the date of Newsome's expression of concern to McKinney, and McKinney's discussion of that concern with Kim.

14

was made so as to be too remote in time to establish causation.  Newsome essentially has asked the court to speculate as to the date of the conversation with McKinney and then as to the date of McKinney's discussion with Kim.  *See Seldon v. Total System Services, Inc.*, 653 F. Supp. 2d 1349, 1380 n. 33 (M.D. Ga. 2009) (noting that without specific evidence of meeting dates, "it would be pure conjecture for the Court to reach a conclusion on when and to whom Plaintiff complained.").  Newsome's evidence, therefore, is not sufficient to establish a causal connection. *Id.* (failure to present evidence of when complaint was is a failure of plaintiff's burden to establish element of causation).   Accordingly, to the extent that Newsome intended to proceed separately on a theory that he voiced an oral internal complaint, summary judgment is due to be GRANTED as to that retaliation claim.

### D. Breach of Contract

The elements of a breach of contract claim are (1) a valid contract binding the parties, (2) the plaintiff's performance under the contract, (3) the defendant's nonperformance, and (4) resulting damage.  *State Farm Fire & Cas. Co. v.  Slade*, 747 So. 2d 293, 303 (Ala. 1999).

On July 1, 2008, Newsome's written contract for employment was extended for one year.  Newsome argues that he was terminated on June 25, 2009, and that a termination prior to July 1, 2009 is a breach of contract.  KwangSung responds that there was no breach of the written contract, which admittedly was for one year, because Newsome was paid through July 4, 2009.  Newsome responds that even though he was paid through July 4, 2009, that only means that he suffered no actual damages, and he would still be entitled to nominal damages, citing *Jones v. Hamilton*, 53 So. 3d 134, 142 (Ala. Civ. App. 2010).   Although given an opportunity to

do so in the reply, KwangSung does not respond to the argument that there was a breach which entitles him to nominal damages.

Alabama law would entitle Newsome to nominal damages if he proves a breach of contract, even if he suffered no actual damages. *See Brooks v. Franklin Primary Health Center, Inc.*, No. 2100224, 2011 WL 1449036 (Ala. Civ. App. April 15, 2011). The court finds, therefore, that summary judgment cannot be granted as to the breach of contract claim based on the written contract alone.

Newsome also argues that it was his understanding that he was to be employed for five years, but that the contracts would be written contacts which were extended one year at a time. He also states that his written contract of employment was modified by an oral agreement that Newsome would continue working for several years, so that there was a breach of the contract of employment for those additional years.

The Alabama Supreme Court reviewed a case in which a written contract of employment did not mention employment for three years, but the plaintiff maintained that the parties entered into a contract of three years' duration, and the employer committed to three years. *Selby v. Quartol Corp.*, 514 So. 2d 1294, 1295 (Ala. 1987). The court held that the alleged oral agreement could not form the basis for a breach of contract claim. *Id.* at 1296.

In addition, although Alabama law provides for modification of written agreements by subsequent oral agreement, oral agreements cannot modify written agreements if "some statutory provision provides otherwise." *Hall v. Integon Life Ins. Co.*, 454 So. 2d 1338, 1343 (Ala. 1984).

As KwangSung points out, the Alabama Supreme Court has determined that a plaintiff's claim of an oral contract for employment for four years is void under the statute of frauds. *See*

*Trum v. Melvin Pierce Marine Coating, Inc.*, 562 So. 2d 235, 236 (Ala. 1990).  An oral modification for a four year period, therefore, would violate the statute of frauds, and is not enforecable.  *Cf. Peters v. Ala. Power Co.*, 440 So. 2d 1028, 1031 (Ala. 1983) (construing together written contract and oral representations because statute of frauds did not apply to a permanent or lifetime employment contract).   The court concludes, therefore, that summary judgment is due to be GRANTED as to any claim for a breach of an oral contract or oral contract modification for employment for four years as void under the statute of frauds.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part as follows:

1.  KwangSung's Motion for Summary Judgment (Doc. #26) is GRANTED and judgment is entered in favor of KwangSung America, Corp. and against Charles Newsome on Newsome's retaliation claims in Count IV of the Complaint and breach of an oral contract in Count V of the Complaint.

2.  The Motion for Summary Judgment (Doc. #26) is DENIED in all other respects.

The case will proceed to trial on Newsome's ADEA, and Title VII race and national origin discrimination claims, as well as a state law breach of a written contract claim for nominal damages.


Done this 20th day of July, 2011.

                                              /s/ W. Harold Albritton_____
                                              W.  HAROLD ALBRITTON
                                              SENIOR UNITED STATES DISTRICT JUDGE